**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAISHA TAPIA,<br><br>                     Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                     Defendant. | Civil Action No. 18-17481 (SDW)<br><br><br>**OPINION**<br><br>February 10, 2020 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Daisha Tapia's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Scott Tirrell's ("ALJ Tirrell") denial of Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income ("SSI") child disability benefits under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Tirrell's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is AFFIRMED.

1

I. **PROCEDURAL AND FACTUAL HISTORY**

A. **Procedural History**

On May 6, 2015, Plaintiff's mother Evelyn Roche ("Roche") filed a Title II application for Disability Insurance Benefits as well as a Title XVI application for Supplemental Security Income (SSI) benefits based on Plaintiff's learning disability, eating disorder, and obesity.[1] (Transcript Record ("Transcript" or "Tr." (58-59, 136-41, 178.))[2] The Social Security Administration denied Plaintiff's application on July 18, 2015, and again on reconsideration on November 15, 2017. (Tr. 12, 79-81, 85-88.) Plaintiff appealed, and ALJ Tirrell held a hearing on July 5 2017. (Tr. 29-57.) ALJ Tirrell issued a decision on November 15, 2017, denying disability under the Social Security Act ("Act"). (Tr. 9-33.) On December 15, 2017, Plaintiff requested that the Appeals Council review ALJ Tirrell's decision, and the Appeals Council denied that request for review on October 23, 2018, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now requests that this Court reverse the Commissioner's decision and either declare that Plaintiff is entitled to disability beginning December 4, 2012 or remand for a new hearing.

B. **Factual History**

Plaintiff is eighteen-years old and currently lives in Newark, New Jersey. (Tr. 59, 167.) The record demonstrates that Plaintiff met with numerous doctors and psychiatrists between 2011

---

[1] Plaintiff became an adult on July 4, 2019 and now pursues this matter on her own behalf.

[2] Roche also alleged disability on the basis of "bone pain." (Tr. 178.) There is nothing in the record to support a finding that Plaintiff suffered from bone pain. To the extent this is a reference diagnosis, ALJ Tirrell properly found that "there is no evidence of any treatment due to a bone/orthopedic disorder." (Tr. 16.)

and 2017 seeking treatment for the conditions that are now associated with her disability claim. (Tr. 270, 272.) The following is a summary of the evidence.

### 1. Learning Disability

In May 2011, Plaintiff took the Wechsler Intelligence Scale for Children-Fourth edition ("WISC-IV") and yielded average scores on verbal comprehension, perceptual reasoning, and processing speed, and yielded a low average score in cognitive functioning and working memory. (Tr. 270-74.) That same month, a learning disabilities teacher consultant indicated that Plaintiff had a learning disorder that could be accommodated through special education. (Tr. 287.)

In May 2015, the results of a Child Bio-Psycho-Social-Assessment found Plaintiff to be cleanly groomed, cooperative, with intact memory and thought process, unremarkable behavior, and normal speech. (Tr. 265.) Plaintiff was also diagnosed with ADHD and a learning disorder. (Tr. 267.) At that time, one of Plaintiff's teachers also opined that Plaintiff was independent but had issues acquiring and using information without assistance. (Tr. 185-86.) State agency consultants subsequently determined that Plaintiff did not meet the medically equal or functionally equal listing for an organic mental disorder. (Tr. 59-75.)

In June 2015, Roland Hong, M.D. ("Dr. Hong"), conducted a psychiatric evaluation of Plaintiff and diagnosed Plaintiff as having a learning disorder but deferred the diagnosis, and assigned a Global Assessment of Function ("GAF") score of 50-55. (Tr. 258-60.) At that time, although Roche reported that Plaintiff struggled academically, Plaintiff reported no problems with social interaction. (Tr. 259.) Dr. Hong assessed Plaintiff as being alert, calm, groomed, with congruent mood, logical thought process, but also diagnosed Plaintiff as obese. (Tr. 259-60.) Dr. Hong again met with Plaintiff in July and August of 2015 and assessed her mental status as concentrated and goal directed with intact memory. (Tr. 256-57.)

3

On June 14, 2016, Plaintiff took the Wechsler Abbreviated Scale of Intelligence ("WASI-II") and yielded a verbal IQ score of 80, performance IQ score of 67 and full scale IQ score of 71. (Tr. 219.) During the examination, Plaintiff reported that she enjoyed helping people and would like to pursue college to become a guidance counselor. (Tr. 219, 223.) Based on the examination, Plaintiff continued to qualify for special education services at school. (Tr. 221.) Plaintiff's case manager described her as a friendly and sociable student, who was prepared to learn, a creative thinker, well-spoken, and able to comprehend information read to her. (Tr. 236.) Although the case manager stated that Plaintiff struggled to begin tasks and suggested a small setting to help her focus, the school district thought that college, full-time competitive employment, and independent living were appropriate measurable postsecondary goals. (Tr. 236-38.)

Dr. Hong continued to see Plaintiff through 2017, noting consistent improvement in attention span and focus when taking her ADHD medication. (Tr. 325-35.) He also reported that Plaintiff had no behavioral complaints, had intact concentration, fair judgement, insight and impulse control, and was performing well academically, except for algebra. (Tr. 337.) Roche reported that Plaintiff was attentive, calmer, and did not exhibit any behavioral complaints. (Tr. 328.)

### 2. Eating Disorder and Obesity

In February 2015, Carol Singer-Granick, M.D. ("Dr. Singer-Granick"), a pediatric endocrinologist, determined that Plaintiff was morbidly obese and had euthyroid autoimmune thryroiditis, but did not wish to treat at the time. (Tr. 311, 313.) Dr. Singer-Granick provided Plaintiff's family with information to support a lifestyle change that included exercise, less screen time, healthy eating, and recommended that Plaintiff see a dietitian in consultation with her primary pediatrician. (Tr. 312.) The next month, Rene B. Esquerre, M.D. ("Dr. Esquerre"), a

4

pediatrician who first began seeing Plaintiff in 2006, indicated that Plaintiff was obese but concluded that Plaintiff's response and treatment were appropriate. (Tr. 254.) In June 2015, Roche reported to Dr. Hong that Plaintiff was a healthy child, with the exception of obesity. (Tr. 258.)

In October 2016, and January 2017, Dr. Hong reported that Plaintiff was obese, but did not exhibit any difficulty breathing or complained of any pain. (Tr. 337, 328.) In February 2017, Plaintiff also saw Dr. Singer-Granick, who reported that Plaintiff had gained weight in the two years since she had last seen her and had not seen a dietician. (Tr. 308.) Dr. Singer-Granick again referred Plaintiff to a dietician, encouraged a lifestyle change, and recommended levothyroxine. (*Id.*)

### C. Hearing Testimony

At the administrative hearing, ALJ Tirrell heard testimony from Plaintiff and Roche. (Tr. 30-57.) Roche stated that Plaintiff suffers from an inability to read or write, obesity, and thyroids. (Tr. 37-41.) Roche also testified that Plaintiff's ADHD medication had helped her attentiveness and hygiene, but did not help improve Plaintiff's reading or writing. (Tr. 41-43.) She further testified that Plaintiff could not complete homework without assistance. (Tr. 44-45.) Finally, Roche testified that Plaintiff was sociable, was not disruptive, and had improved her grades. (Tr. 46-47.)

Plaintiff testified that she was only attending special education classes for math and language arts, and because of one-on-one assistance from her teachers, she was doing "pretty good" in school. (Tr. 51-55.) Plaintiff testified that when she's unable to understand her schoolwork she becomes frustrated, but is able to move past these issues with the assistance of her teachers. (Tr. 56.)

5

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which

evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Three-Step Child Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual under the age of 18 will be considered disabled under § 1614(a)(3)(C) of the Act if he (1) is not engaged in gainful substantial employment and (2) has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

Even if an impairment does not meet, or is not medically equal to, the requirements of an impairment in the Listing of Impairments ("Listings"), 20 C.F.R. § 404, Subpart P, App. 1, the

claimant may be disabled if his impairment or combination of impairments is functionally equivalent to a listed impairment. 20 C.F.R. § 416.926a. Functional equivalence is measured by assessing the claimant's ability to function in terms of the following six domains, which are broad areas of functioning intended to capture all of what a child can or cannot do: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a Listing if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b)(1)(i-vi).

The SSA has established a three-step sequential process to evaluate the disability application of a minor. 20 C.F.R. § 416.924(a). In step one, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. If yes, the individual is not disabled and the claim is denied. 20 C.F.R. § 416.924(b).

If the claimant is not currently engaged in substantial gainful activity, then, in step two, the ALJ must determine whether the claimant has a severe and medically determinable impairment or combination of impairments. If not, the individual is not disabled and the claim is denied. 20 C.F.R. § 416.924(c).

If the claimant has a severe and medically determinable impairment, then, in step three, the ALJ must determine whether the claimant's impairment meets, medically equals, or functionally equals an impairment in the Listings. If the claimant's impairment meets or equals an impairment in the Listings, and meets the duration requirement, disability is presumed and benefits are awarded. 20 C.F.R. § 416.924(d). When the claimant's impairment does not meet or equal an impairment in the Listings, or does not meet the duration requirement, the individual is not disabled

and the claim is denied. 20 C.F.R. § 416.924(d)(2).

III. **DISCUSSION**

A.

On November 15, 2017, ALJ Tirrell issued a decision concluding that Plaintiff is not disabled. At step one, ALJ Tirrell found that Plaintiff is not engaged in substantial gainful employment. (Tr. 16.) At step two, he found that Plaintiff suffers from severe impairments: learning disorder, attention deficit hyperactivity disorder ("ADHD"), and obesity. (*Id.*) At step three, however, ALJ Tirrell concluded that Plaintiff's impairments do not meet or medically equal the severity of the Listings for these respective impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926). (Tr. 16-17.) ALJ Tirrell noted that severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing in §§ 12.02B, 12.05B and 12.11B. (*Id.*) In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied. (Tr. 17.) To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning, which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (Tr. 14-15); *see also* 20 C.F.R. 404, Subpart P, Appendix 1. A marked limitation means independent, appropriate, effective, and sustained functioning is seriously limited. (Tr. 15); *see also* 20 C.F.R. 404, Subpart P, Appendix 1. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis. (Tr.15-16.) At step three, the ALJ also concluded that Plaintiff's impairments or combination of impairments do not functionally equal the severity of the Listings in each of the six functionally equivalent domains (20 C.F.R. 416.924(d) and 416.92a). (Tr. 16-17.)

9

In acquiring and using information, ALJ Tirrell determined Plaintiff had a marked limitation. (Tr. 20-21.) The record showed that Plaintiff had a learning disability primarily in math and reading that was accommodated in a special education program. (*Id.*) Beginning in 2011, test results indicated that Plaintiff was significantly below grade level in both math and reading. (Tr. 18-19.) Nevertheless, the prescription of ADHD medication has improved the Plaintiff's distractibility and inattentiveness, and in October 2016, Plaintiff reported that, except for algebra, she was doing fairly well academically. (Tr. 19, 337.)

In attending and completing tasks, ALJ Tirrell determined Plaintiff has less than marked limitations. Plaintiff was diagnosed with ADHD, but medical records show an improvement with treatment. (Tr. 15.) Additionally, Plaintiff and her mother both testified that treatment had helped her with school and her personal hygiene. (Tr. 42-43, 47-48.)

Regarding interacting and relating with others, ALJ Tirrell found that Plaintiff has no limitations. (Tr. 22.) Plaintiff reported having friends, spending time with them, listening to music, watching television, and other developmentally appropriate conduct, and school records confirm that Plaintiff is friendly, likes to socialize, and has a positive attitude. (*Id.*)

ALJ Tirrell also found Plaintiff had less than marked limitations with regard to moving about and manipulating objects, and caring for herself. (Tr. 23-24.) Although the Plaintiff is obese and tires quickly, she has no physical restrictions or severe impairments. (*Id.*) Plaintiff also struggles regulating her appetite and maintaining personal hygiene, but has improved with ADHD treatment. (*Id.*)

B.

On appeal, Plaintiff asserts that (1) substantial evidence in the administrative record establishes entitlement and eligibility for benefits applied for, and (2) the RFC is not based on

substantial evidence. (Pl.'s Br. at 5.) This Court considers the arguments in turn and finds each unpersuasive.

Plaintiff first contends that ALJ Tirrell did not conduct a Step Three Analysis because the ALJ's decision does not compare the impairments individually or in combination with the Commissioner's published guidelines. (*Id.* at 9.) However, ALJ Tirrell provided a thorough and detailed discussion of the relevant evidence and referred to evidence in the record to draw a reasonable inference that Plaintiff's severe and non-severe impairments did not render Plaintiff disabled after the established onset date of disability. (Tr. 17-20.) Because Plaintiff presents no objective medical evidence or medical opinions to disprove ALJ Tirrell's findings, this Court finds that ALJ Tirrell's decision is supported by substantial evidence and correctly determined that Plaintiff is not disabled. (Tr. 25.)

Plaintiff next argues that the RFC determination is not based on substantial evidence because the record does not take into account a combination of Plaintiff's impairments, specifically Plaintiff's obesity. (Pl's Br. at 18.) Plaintiff's argument is without merit. ALJ Tirrell referred to Plaintiff's obesity throughout his analysis and noted that there were no physical restrictions due to Plaintiff's obesity. (Tr. 16, 19, 23, 311-12, 328, 337.) Moreover, Plaintiff again failed to present medical evidence to refute ALJ Tirrell's determinations. Nor did Plaintiff specify how her obesity would change the ALJ's determination. As a result, this Court finds that ALJ Tirrell properly analyzed the evidence to correctly determine Plaintiff's obesity did not adversely affect Plaintiff.

## IV. CONCLUSION

This Court finds that ALJ Tirrell's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

*s/ Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties